Robert M. Carlson
CORETTE POHLMAN & KEBE
129 West Park Street
P.O. Box 509
Butte, MT  59703
PH    : 406-782-5800
FAX  : 406-723-8919
bcarlson@cpklawmt.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | | |
|---|---|---|
| RICHARD BARBER and BARBARA BARBER, | * * * | No. CV-12-43-BU-DLC |
| Plaintiffs, | * | **DEFENDANTS' PRELIMINARY** |
| v. | * * | **PRETRIAL STATEMENT** |
| REMINGTON ARMS CO., INC., SPORTING GOODS PROPERTIES, INC., and E. I. DuPONT DE NEMOURS & CO., | * * * * * | |
| Defendants. | * | |

Defendants Remington Arms Company, LLC (formerly "Remington Arms Company, Inc.", hereinafter "Remington"), Sporting Goods Properties, Inc., and E.I. du Pont de Nemours and Company (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Rule 16.2 of the Local Rules of Procedure for the United States District Court for the District of Montana, provide the following Preliminary Pretrial Statement.

## A.   BRIEF FACTUAL OUTLINE

Plaintiffs initially sued these same Defendants in 2001 in connection with the October 2000 shooting death of their son, Gus Barber.  In their 2001 Complaint, Plaintiffs alleged that Barbara Barber accidently shot Gus while she was handling a Remington Model 700 rifle.  Plaintiffs sought compensatory and punitive damages based on strict products liability, failure to warn, negligence, breach of warranty, infliction of emotional distress, spoliation of evidence and failure to recall or retrofit.

Defendants answered Plaintiffs' 2001 Complaint, denied liability and raised defenses to Plaintiffs' claims, including contributory negligence, product misuse and product alteration.  The 2001 lawsuit was settled and dismissed in 2002, and Plaintiffs agreed to discharge Defendants from all past, present and future claims arising from the accident.

Plaintiffs filed this lawsuit in July 2012, alleging that statements made by Remington on its website in response to a 2010 CNBC program, "Remington Under Fire," were defamatory of them and caused them emotional distress. (Doc. 1).  Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6), and filed a detailed brief in support of its motion.  (Docs. 8, 9).  In response to the motion, Plaintiffs' filed a First Amended Complaint, in which they allege nearly

identical defamation, intentional infliction of emotional distress and civil conspiracy claims. (Doc. 13).

On October 19, 2012, Defendants responded to the First Amended Complaint by filing a Rule 12(b)(6) motion to dismiss in which they maintain that Plaintiffs claims were released and discharged in their 2002 settlement with Defendants.  Alternatively, Defendants maintain that Plaintiffs' claims should be dismissed because Remington's statements relating to Plaintiffs do not carry a defamatory meaning, do not survive the innocent construction rule, and are privileged.  In addition, as limited purpose public figures, Plaintiffs cannot plead or prove that Remington made statements concerning them with actual malice. (Docs. 23, 24).

### B.   ISSUES CONCERNING JURISDICTION AND VENUE

Defendants agree that venue and jurisdiction in this Court are appropriate.

### C.   FACTUAL BASIS OF EACH CLAIM OR DEFENSE

The Model 700 center fire bolt-action rifle was introduced in 1962.  Since that time, nearly five million Model 700 rifles have been manufactured and sold to hunters, target shooters, law enforcement agencies, and the United States military. By virtually all accounts, the Model 700 is the most popular bolt-action rifle ever produced.

After the CNBC program regarding the Model 700 rifle aired in October 2010, Remington posted its written and video response to the program's accusations on Remington's website. In its response, Remington defended the integrity of the rifle's design and stated its position on subjects raised on the program by litigants, their attorneys and their expert witnesses.

Plaintiffs' claim that Remington's response to the CNBC program was defamatory is based on Plaintiffs' disagreement with Remington's position on the design of Model 700 rifle. The purpose behind Plaintiffs' allegation is clear: they seek a determination that the Model 700 rifle used in the accidental shooting death of their son was a defectively designed product.

Based on the following, Plaintiffs' claim is not actionable:

- In 2002, Plaintiffs released Defendants from all present and future claims in any way arising out of the accidental shooting;

- Remington's statements regarding the condition of incident rifle do not carry a defamatory meaning, either on their face or by reasonable implication;

- Remington's other statements relate to the Model 700 generally and are neither defamatory nor "of and concerning" Plaintiffs;

- As limited purpose public figures, Plaintiffs cannot plead or prove that Remington made the allegedly defamatory statements with "actual malice;"
- Remington's statements were made in response to widely-published accusations made against it on the CNBC program and are protected by the self-defense privilege; and
- Remington's statements were a fair report of the defenses it raised to Plaintiffs' 2001 lawsuit and are privileged.

Plaintiffs' claims are both factually and legally without merit.

### D.   LEGAL THEORY

Defendants dispute that Remington's statements in response to the CNBC program were defamatory of Plaintiffs, false, non-privileged or otherwise actionable.  *See* Mont. Code. Ann. §27-1-802.  Plaintiffs' claims fail as a matter of law for the following reasons.

*First*, Plaintiffs "forever discharge[ed]" Defendants in 2002 "from any and all past, present, or future claims … on account of, or may in any way grow out of the Accident."  Plaintiffs' claims in this lawsuit, although disguised by the language of defamation law, are plainly attempts to litigate product defect allegations that have been released.  Even if Remington had first published the statements in 2010 rather than in 2001, the release would still bar this lawsuit,

which represents "future claims" for damages "which may hereafter accrue or otherwise be acquired" that "may in any way grow out of the Accident".

*Second*, Plaintiffs have not pleaded a defamation claim under Montana law. Most of the statements that Plaintiffs allege are defamatory are not "of and concerning" Plaintiffs at all, and are therefore not actionable. *Wainman v. Bowler*, 176 Mont. 91, 94, 576 P.2d 268, 270 (1978); *Pisani v. Staten Island Univ. Hosp.*, 440 F.Supp.2d 168, 172 (E.D.N.Y. 2006). Remington's statement regarding the findings made during the joint inspection and testing of the incident rifle and experts' inability to duplicate discharges without trigger pulls on well-maintained, unaltered rifles returned from the field do not carry a defamatory meaning, either on their face or by reasonable implication. Whether a statement carries a defamatory meaning is a threshold question of law for the Court's determination. *Knievel v. ESPN* , 223 F.Supp.2d 1173, 1181 (D.Mont. 2002)

*Third*, Remington's statements have "innocent constructions." If the Court determines that an alleged defamatory statement has two or more reasonable constructions, one defamatory and one innocent, the innocent construction must be adopted and the statement is therefore non-defamatory as a matter of law. *Wainman*, 576 P.2d at 270; *Keller v. Safeway Stores, Inc.*, 111 Mont. 28, 108 P.2d 605, 608 (1940); *Anderson v. City of Troy*, 316 Mont. 39, 45, 69 P.3d 805, 808 (2003).

*Fourth*, even if Remington's statements could be seen as defamatory, Plaintiffs, as limited purpose public figures, cannot meet the high bar of pleading or proving that Remington made the alleged defamatory statements with "actual malice." *Gertz v. Robert Welch Inc.*, 418 U.S. 323 (1974); *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964); s*ee also Kurth v. Great Falls Tribune Co.*, 246 Mont. 407, 409 (1991).

*Fifth*, Remington's statements are protected by the self-defense and fair reporting privileges, and are therefore not actionable. Mont. Code. Ann. §27-1-804(4); *Novecon Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 566 (D.C. Cir. 1999); *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1559 (4th Cir. 1994). Privilege is a question of law for the court. *Lence v. Hagadone Inv. Co.*, 258 Mont. 433, 443, 853 P.2d 1230, 1237 (1993), *overruled on other grounds*, *Sacco v. High Country Indep. Press, Inc.*, 271 Mont. 209, 896 P.2d 411 (1995). Remington's statements are no more than Remington's reiteration of the positions pleaded by Defendants in the already settled litigation between the Parties and are statements that Remington made nearly 10 years earlier in response to a similar national news report regarding the Model 700 rifle.

*Sixth*, Plaintiffs' intentional infliction of emotional distress claim is based on Remington's alleged defamatory statements and fails for the same reasons as

Plaintiffs' defamation claim fails. *Lence*, 258 Mont. at 446; *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1193 n. 2-3 (9th Cir.1989).

*Seventh*, Plaintiffs' civil conspiracy claim fails because the underlying acts in furtherance of the alleged conspiracy are Remington's allegedly defamatory statements. Because Plaintiffs' do not have an actionable defamation claim against Defendants, their conspiracy claim cannot proceed. *Scottrade, Inc. v. Davenport*, 2012 WL 2019679, *30 (D. Mont. June 5, 2012). Even if the defamation claim somehow survived, Plaintiffs have failed to plead, *inter alia*, support for their assertion that Defendants formed a conspiracy to defame them.

*Eighth*, Plaintiffs' claims may be barred by the applicable statute of limitations. Mont. Code. Ann. §27-2-204.

Defendants reserve the right to move for judgment in their favor and against the Plaintiffs under additional dispositive legal theories.

### E.  COMPUTATION OF DAMAGES

Defendants are not seeking damages in this action at this time.

### F.  RELATED LITIGATION

*Barber v. Remington Arms Company, Inc., et al.*, No. 01-cv-083-BU-LBE (D. Mont. 2001), the previously settled and dismissed product liability and emotional distress lawsuit brought by these same Plaintiffs against these same Defendants.

## G. PROPOSED STIPULATIONS

1. Plaintiffs are residents of the State of Montana and defendants are corporate entities with their principal place of business outside the State of Montana.

2. Plaintiffs are residents of Gallatin County, Montana.

3. Defendant Sporting Goods Properties, Inc. was formerly known as Remington Arms Company, Inc.

4. Defendant Remington Arms Company, LLC (hereinafter "new Remington") is a corporation duly organized and incorporated under the laws of Delaware with its corporate headquarters and principal place of business in Delaware from December 1, 1993, to June 24, 1996, and in North Carolina thereafter.  Since December 1, 1993, the new Remington was authorized to do and was conducting business in Montana.

5. Plaintiffs Richard Barber (hereinafter "Richard") and Barbara Barber (hereinafter "Barbara") are married and are the father and mother of Richard Augustus Barber, deceased (hereinafter "Gus").

6. On October 23, 2000, Gus died as a result of a being struck by a bullet from a Remington Model 700 bolt-action rifle which discharged while being held by Barbara.

7. At the joint firearms inspection in November 2000, experts retained by both Plaintiffs and Defendants found the rifle was rusted and internal mechanisms had been either adjusted or removed and reinstalled.

8. Barbers filed a lawsuit against the Defendants as a result of the shooting accident. This lawsuit was settled in return for a full and final release in 2002.

9. In 2001, Richard was interviewed by CBS Evening News Eye on America for a three-part series. The three segments were entitled "A Deadly Flaw," "Fixing a Fatal Flaw," and "Remington Model 700: Friend or Foe." This series was broadcast nationwide.

10. Richard has been featured in a number of newspaper articles, including a USA Today story entitled, "Death, Injuries Raise Questions for Popular Remington Model 700 Rifle."

11. Richard was interviewed and Barbara was filmed for a CNBC original program called, "Remington Under Fire: A CNBC Investigation." This program aired generally on October 20, 2010, and portions were shown on NBC Nightly News the same date. Richard was one of the primary resources for this program. Richard and Barbara were featured in the program.

12. Remington's statement dated September 7, 2010 made to CNBC before the airing of "Remington Under Fire" did not mention the Barbers.

13. After airing of the October 20, 2010 program, Remington published responses to CNBC's "Remington Under Fire," on its website located at http://remington700.tv, which included a video response and a written Point by Point Response to CNBC's "Remington Under Fire."

14. Remington's video response is on file with the Court, Doc. 8-9 Exhibit I, and Remington's written response is on file with the Court, Doc. 8-8 Exhibit H. The video response and the written response on file with the Court are authentic and accurate copies of Remington's statements.

### H. PROPOSED DEADLINES FOR AMENDMENT OF PLEADINGS

January 2, 2013 is the agreed deadline for amending the pleadings without leave of Court.

### I. CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

Defendants' case dispositive Rule 12(b)(6) motion to dismiss is pending. The motion is predicated on threshold questions of law for the Court to decide, including the impact of Plaintiffs' 2002 release.

### J. SETTLEMENT

No discussions have occurred at this point.

## K. SUITABILITY OF SPECIAL PROCEDURES

Plaintiffs have disclosed in the Joint Discovery Plan filed with the Court their intention to pursue discovery from Defendants on subject matters that are wholly irrelevant to their claims, each of which is premised on Plaintiffs' ability to surmount their substantial burden of pleading a cause of action for defamation. If, despite the questions of law that are now ripe for the Court's determination, there is a need to engage in discovery, Defendants anticipate that Court supervision of discovery may be necessary under Rule 26(c) to protect against oppression, undue burden and undue expense, including an order precluding inquiry into certain matters that are irrelevant to Plaintiffs' defamation claim.

DATED this 23rd day of October, 2012.

        */s/ Robert M. Carlson*
        Robert M. Carlson
        Corette Pohlman & Kebe
        Attorneys for Defendant