Robert M. Carlson
CORETTE POHLMAN & KEBE
129 West Park Street
P.O. Box 509
Butte, MT  59703
PH   :  406-782-5800
FAX  :  406-723-8919
bcarlson@cpklawmt.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | | |
|---|---|---|
| RICHARD BARBER and BARBARA BARBER, | * * * | No. CV-12-43-BU-DLC |
| Plaintiffs, | * | **DEFENDANTS' BRIEF IN** |
| v. | * * | **SUPPORT OF MOTION FOR** **PROTECTIVE ORDER** |
| REMINGTON ARMS CO., INC., SPORTING GOODS PROPERTIES, INC., and E. I. DuPONT DE NEMOURS & CO., | * * * * * | |
| Defendants. | * | |

# INTRODUCTION

Plaintiffs have served a "First Request for Production of Documents" demanding that defendants produce 480 different categories of documents dating back to 1943. Plaintiffs instructed defendants to respond to the request for production on behalf of current and former employees who were in any way involved in "the development, design, production, manufacturing, marketing,

advertising, distribution and sale" of bolt-action rifles, including the Remington Model 700 rifle. (Plaintiffs' First Request for Production, at p.4, attached as Exhibit A).

Plaintiffs agreed on December 27, 2012, to extend the time for Defendants to respond to the request for production by 30 days. Defendants accepted the extension and agreed to not seek a court order staying discovery entirely pending resolution of defendants' pending Rule 12(b)(6) motion to dismiss. (E-Mail correspondence, attached as Exhibit B). On December 28, 2012, plaintiffs formalized the parties' agreement by agreeing to defendants' unopposed motion to extend the time to respond to the request for production by 30 days. (*See* Doc. 31 and Exhibit B). After the Court denied defendants' motion, indicating that although it would not order an extension of time the parties were nevertheless free to stipulate to the extension (Doc. 32), plaintiffs unexpectedly backed out of their agreement to extend Defendants' response deadline. (*See* Exhibit B).

Defendants responded to plaintiffs' request for production of documents on January 18, 2013. (Defendants' Response to Plaintiffs' First Request for Production, attached as Exhibit C). In their response, defendants objected to those requests that have no bearing on plaintiffs' factually narrow defamation claim, are oppressive and harassing, and impose undue burden and expense on defendants.

# ARGUMENT

## I. Discovery from Defendants Should Be Stayed Pending Resolution of Defendants' Motion to Dismiss.

Plaintiffs' request for production raises substantial questions regarding the scope of permissible discovery in this case. These questions should be reserved and discovery from defendants should be stayed until the Court rules on defendants' pending, fully-briefed, and potentially dispositive Motion to Dismiss Plaintiffs' First Amended Complaint.

Plaintiffs' discovery requests leave no room for doubt that the driving force behind plaintiffs' defamation claim is to obtain a judicial determination that the Model 700 rifle is a defective product. Nearly all the documents requested by plaintiffs relate to the design and manufacture of Remington bolt-action rifles over the last 70 years, including documents reflecting Remington's consideration of alternative safety mechanisms, trigger mechanisms, and fire controls. Virtually none of the documents requested by plaintiffs relate to matters relevant to their defamation claim. There is little question that plaintiffs are seeking discovery of documents related to the product liability claims they voluntarily relinquished by written agreement in 2002.[1]

---

[1] Another reason for plaintiffs' astoundingly objectionable request for documents regarding the design and manufacture of Remington bolt-action rifles over the last 70 years may be that plaintiffs' counsel recently filed a putative class action against the defendants in which they seek to prove that the Model 700 rifle

The court has wide discretion in controlling discovery and its rulings will not be overturned in the absence of a clear abuse of discretion. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir.1988). A stay of discovery under the circumstances in this case is consistent with the goal of Federal Rule of Civil Procedure 1, which states that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint was fully briefed on November 21, 2012. There are no factual issues raised in defendants' motion, only questions of law for the Court's determination. Under this circumstance, staying discovery pending resolution of the motion to dismiss is appropriate. *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984) (staying discovery pending a motion to dismiss is permissible where there are no factual issues raised in the motion); *see also Wagh v. Meteris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir.2003), *overruled on other grounds, Odom v. Microsoft Corp.*, 486 F. 541, 551 (9th Cir.2007) (*en banc*) (discovery at pleading stage is only appropriate where factual issues are raised in a pending Rule 12(b) motion). Indeed, the purpose of Rule 12(b)(6) "is to enable defendants to challenge the legal

---

is defectively designed. (*Chapman, et al. v. Remington Arms Company, LLC, et al.*, U.S. District Court, Southern District of Florida, 1:12-cv-24561, Doc. 1). There is reason to believe plaintiffs' counsel seeks to discover documents in this case for use in their putative class action case in Florida.

sufficiency of a complaint without subjecting themselves to discovery." *Rutman Wine Co. v. E.&J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.1987).

The court may for "good cause issue an order to protect" parties from "annoyance, embarrassment, oppression, or undue burden or expense … by specifying terms … for … discovery." Fed.R.Civ.P. 26(c)(1)(C). "Good cause" to stay discovery now exists by reason of Plaintiffs' 480-item request for production of documents covering a 70-year period of time. Plaintiffs' requests plainly go beyond the narrow factual matters that may be discoverable in their defamation claim.[2]

It would be a waste of the Court's resources to now address plaintiffs' numerous requests for production to which defendants have objected while the motion to dismiss is pending. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("district courts should not neglect their power to restrict discovery where 'justice

---

[2] Defendants previously moved to postpone the Rule 16.2 pretrial conference pending the Court's decision on defendants' not-yet-filed motion to dismiss Plaintiffs' Amended Complaint. (Doc. 17). The Court denied defendants' motion citing the Court's strong interest in holding the conference as required by the Local Rule. (Doc. 22). The Court also observed that a determination of "good cause" to stay discovery under Rule 26(c) could not be made until the Court was able to take a "preliminary peek" at defendants' motion to dismiss. Defendants' motion to dismiss the Amended Complaint has now been filed and fully-briefed and a determination of "good cause" can be made.

requires [protection for] a party from annoyance, embarrassment, oppression or undue burden or expense.'").[3]

In *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 608 (D.Nev. 2011), defendant's motion to stay discovery pending resolution of defendant's motion to dismiss was granted. As in this case, defendant's motion to dismiss raised no factual issues and would be decided purely on issues of law. *Id*. In deciding to stay discovery, the court first took a "preliminary peek" at the merits of the motion to dismiss, but cautioned:

> [T]his court's "preliminary peek" at the merits of the underlying motion is not intended to prejudge its outcome. Rather, this court's role is to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1. With Rule 1 as its prime directive, this court must decide whether it is more just to speed the parties along in discovery and other proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery and other proceedings to accomplish the inexpensive determination of the case.

*Id*. at 603.

Thus, *Tradebay* court recognized that it need not decide the underlying motion to dismiss in order to grant a motion to stay but only evaluate the motion's

---

[3] The potential for discovery abuse is of particular concern in defamation cases. *Herbert*, 441 U.S. at 204 (dissenting, Marshall, J.) ("Given the circumstances under which libel actions arise, plaintiffs' pretrial maneuvers may be fashioned more with an eye to deterrence or retaliation than unearthing germane material."). Given the narrow subject matter on which Remington allegedly defamed plaintiffs, plaintiffs' 480 item request for production is abusive and suggests a strategy that has no connection to plaintiffs' defamation claim.

merits under the guiding principles articulated in Rule 1. Taking the approach that a court must first decide a motion to dismiss before addressing a motion to stay makes little sense. Orders staying discovery would only be appropriate in cases that are to be dismissed, which would render motions to stay moot and district court discretion to control discovery meaningless.

Reliance on *Wood v. McEwan*, 644 F.2d 797, 801 (9th Cir.1981) for the proposition that "good cause" requires the court to first be "convinced" that defendants' motion to dismiss is meritorious before staying discovery is misplaced. Both *Wood* and the decision on which it relied, *B.R.S. Land Investors v. United States*, 596 F.2d 353 (9th Cir.1978), involved stays of discovery while plaintiffs attempted to amend complaints that the courts had already found deficiently pleaded. In *Wood*, the court stated:

> A district court may limit discovery "for good cause", Rule 26(c)(4), Federal Rules of Civil Procedure, and may continue to stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.

*Id*. at 801.

Thus, the *Wood* court recognized that "good cause" is the predicate standard to be applied to requests to stay or limit discovery. By stating that discovery stays "may continue" if a court is "convinced" that plaintiff cannot cure pleading deficiencies by amendment, the *Wood* court did not supplant Rule 26(c) and create a new standard to be applied to motions to stay discovery during the pendency of

motions to dismiss. The court merely articulated the standard applicable to orders continuing discovery stays when motions to dismiss previously dismissed complaints are pending.[4]

At bottom, plaintiffs' request for 480 categories of documents covering the past 70 years during the pendency of defendants' potentially dispositive motion to dismiss on issues of law constitutes good cause to stay discovery. Defendants respectfully request that all discovery from defendants be stayed pending the court's resolution of their Motion to Dismiss the First Amended Complaint.

## II. Alternatively, a Protective Order Should Be Entered Limiting the Scope of Permissible Discovery to Information and Documents Relevant to Plaintiffs' Defamation Claim.

District courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir.2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P.

---

[4] District courts relying on *Wood* have unfortunately used ellipses when quoting from the case and have confused the Ninth Circuit's approach to Rule 26(c) motions to stay discovery. *See, e.g.*, *F.T.C. v. AMG Services, Inc.*, 2012 WL 3730561, *3 (D.Nev.2012) ("A district court may ... stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief."). Only by eliminating the *Wood* court's reference to the predicate "good cause" standard can the decision be read to require that a district court first be "convinced" of the merits of motion to dismiss before granting a stay of discovery.

26(b)(2)(C).  Limits also should be imposed where the burden or expense outweighs the likely benefits. *Id.*

In contrast to the legal issues presented by plaintiffs' defamation claim, there are very few factual matters on which discovery may be necessary in this case. Those subject matters are (1) whether Remington's statements regarding the condition of the Barber rifle when it was inspected and tested in 2000 were true, and (2) if Remington's statements were false, whether Remington made the statements with actual malice, *i.e.*, with knowledge they were false or with reckless disregard of whether they were false or not.  *See New York Times v. Sullivan*, 376 U.S. 254, 280 (1964).  Thus, plaintiffs' discovery should be focused on the inspection of the rifle in 2000, whether Remington accurately stated what was seen and determined at the inspection and, if not, whether Remington's statements regarding the inspection were made with actual malice.

Even assuming that other statements made by Remington in response to the CNBC program are found to be "of and concerning" plaintiffs—another question of law for the Court's determination—the scope of permissible discovery regarding those statements is similarly limited.  For example, Remington's statement that neither it nor experts hired by plaintiff attorneys have been able to duplicate a discharge without a trigger pull on a Model 700 "accident gun" which had been "properly maintained and which had not been altered after sale," raises two

possible subject matters for discovery: was Remington's statement true and, if not, did Remington make the statement knowing it to be false or with reckless disregard for its falsity. Remington's statement on this subject does not, however, open the door to discovery of 70 years of design, manufacturing and testing documents relating to rifles that were not involved in accidents, were not inspected and tested by both Remington and plaintiff attorneys, did not allegedly fire without the trigger being pulled and were not improperly maintained or altered after the sale.

Defendants properly objected to plaintiffs' requests for production that go beyond the scope of permissible discovery on their factually narrow defamation claims. Each of Defendants' objections is addressed separately below.

### A.   Requests for Production Number 1 (Nos. 1–471).

Plaintiffs seek 471 different documents designated by document title, document number or description. Defendants objected to production of these documents on two grounds.

First, plaintiffs' description of the documents and their titles makes clear that these documents are not reasonably calculated to lead to the discovery of evidence relevant to plaintiffs' defamation claim. For example, Sporting Arms and Ammunition Manufacturers Institute (SAAMI) posters and other materials promoting safe gun handling (Exhibit A, RFP 1, Nos. 3-7); Patents from 1937 and 1940 (Exhibit A, RFP 1, Nos. 12, 13); and internal Remington memoranda and

drawings dating back to the 1940s (*passim*) have no connection to the condition of Barber rifle when it was inspected and tested by the parties in 2000.

Second, plaintiffs' request that defendants assemble and produce these documents is oppressive and imposes undue burden and expense on defendants for the simple reason that plaintiffs already possess at least 468 of the documents identified in Requests 1 through 471. Indeed, plaintiffs identified 440 of the 471 documents in their Rule 26(a)(1) Initial Disclosure as documents they have in their "custody and control." (Plaintiffs' Rule 26(a)(1) Initial Disclosure, at p. 2, attached as Exhibit D).[5] The small number of requested documents (31) that plaintiffs did not identify in their Initial Disclosure are either (a) in their attorney's possession, having been produced by Remington in 2011 in *Kinzer, et al. v. Remington Arms Company, LLC, et al.*, a putative class action in which plaintiffs' counsel in this case, Richard Ramler, represented the putative class representative plaintiffs,[6] or

---

[5] The documents are among those produced by Remington in product liability cases and are presumably documents that have either been kept by plaintiffs' counsel, who has represented plaintiffs in such cases, or Richard Barber himself, who states in his First Amended Complaint that he has "obtained thousands of pages of Remington's internal documents." (Doc. 13, ¶12).

[6] *Kinzer v. Remington*, United States District Court, Western District of Oklahoma, 09-cv-1242-R, judgment for defendants entered September 4, 2012, appeal pending.

(b) are facially irrelevant to plaintiffs' claims in this case.[7]  Regardless of the source of the documents, there is no basis on which to require Remington to undertake the burden and expense to produce facially irrelevant documents that plaintiffs already have.

### B.   Request for Production Number 2.

Plaintiffs seek "[a]ll documents and communications concerning all customer reports or complaints, including copies of the complaints or reports themselves, received by Defendants regarding WFC [Walker fire control] Rifles discharging without a trigger pull." Defendants objected to production of these documents on the same grounds as they objected to Requests for Production 1 through 471. Plaintiffs have acknowledged that each of these documents are already in their "custody or control." (Exhibit D, pp. 2, 9, 55-64). There is no basis on which to require that defendants again undertake the burden and expense to produce these documents to Plaintiffs. Regardless, plaintiffs' request for all

---

[7]   There are only three (3) documents identified in Request for Production No. 1 that plaintiffs and their attorney apparently may not possess, none of which have any connection to the possible factual issues in this case:

- 387.   M710 Design Acceptance Test for M710 new Center fire Rifle Revision 2 03/31/00, Williams v. Remington Production document, Bates #ET07332-7393;

- 397.   M/710 Trial & Pilot, Williams v. Remington Production document, Bates #ETE19219-19220**, 11/8/00; and

- 467.   Abuse Testing, Williams v. Remington Production document, Bates #ETE1919388; 7/31/2006.

customer complaints regarding bolt-action rifles allegedly discharging without a trigger pull is overly broad in the context of plaintiffs' narrow claim that Remington falsely described the 2000 inspection and testing of the Barber rifle in its response to the CNBC program. Whether others complained to Remington about accidental discharges does not speak to whether Remington accurately reported findings from the joint 2000 inspection and testing of the incident rifle.

### C.   Request for Production Number 3.

Plaintiffs seek "[a]ll documents and communications concerning all gallery testing of the WFC, including any failure audit or analysis from the initial design to the WFC to the present." Defendants objected to the production of these records because, once again, plaintiffs have acknowledged that they already have these records in their "custody or control." (Exhibit D, pp. 2, 14, 19, 20). In addition, gallery testing is performed by Remington as part of quality control before firearms are shipped from the manufacturing facility. The results of gallery testing have no bearing on the factually narrow claim that Remington falsely described the condition and testing of the Barber rifle. Moreover, the firearms subjected to pre-shipment gallery testing are not "accident guns" referred to by Remington in its response to the CNBC program.

### D.    Request for Production Number 4.

Plaintiffs seek "[a]ll documents and communications received in response to the Subpoena to Produce Documents, Information, or Objects served by Defendants on Kenneth Soucy in *Pienaar v. Remington Arms Company, LLC, Sporting Goods Properties, Inc. and E.I. DuPont de Nemours & Co*., U.S. District Court, Western District of Pennsylvania, No. 2:11-cv-1476" and issued in the "District of South Carolina, No. 2:12-mc-00226 on June 26, 2012." The *Pienaar* case was a product liability action filed in the Western District of Pennsylvania. (*See Pienaar* Complaint, Doc. 1, 2:11-cv-01476-JFC). Mr. Soucy, now deceased, was a former Remington employee who was subpoenaed to produce documents in his possession regarding the design and development of Remington bolt-action rifles and his communications with attorneys representing plaintiffs in product liability cases against Remington. (*See* Subpoena, Doc.1-1, issued in the District of South Carolina, 2:12-mc-00226-CIV).

Plaintiffs' request for these documents is an obvious fishing expedition. Plaintiffs cannot demonstrate that the types of documents requested from Mr. Soucy have any bearing on their factually narrow defamation claim.[8]

---

[8]    The documents produced by Mr. Soucy can be produced to the Court for an *in camera* inspection, which will confirm defendants' position that they are irrelevant to plaintiffs' defamation claim.

### E. Request for Production Number 5.

Plaintiffs seek "[a]ll documents and communications regarding Richard Barber, Barbara Barber and/or Gus Barber from the year 2000 to the present." This request is overly broad given the narrow factual matters that may be at issue in this case. The only documents "of and concerning" the plaintiffs that may be discoverable in this case are those that were created in response to the CNBC program aired in October 2010 and relate to Remington's allegedly defamatory statements. Documents regarding the Barbers that pre-date the CNBC program or address subject matters unrelated to subjects addressed in Remington's responses to the CNBC program have no possible bearing on the possible factual issues in this case.

Subject to these objections, defendants have indicated their willingness to produce non-privileged documents regarding the plaintiffs that were generated from January 1, 2010 through the date this case was commenced on July 2, 2012.

### F. Requests for Production Numbers 6 and 7.

Plaintiffs seek in Request for Production 6 "[a]ll documents and communications received by defendants in response to the CNBC show 'Remington Under Fire.'" In Request for Production 7, plaintiffs seek "[a]ll documents and communications received by defendants in response to the website located at http://remington700.tv, an Official Statement for CNBC Program

Regarding the Model 700, and/or a Point by Point Response to CNBC "Remington Under Fire."'

Defendants have objected to these requests on the basis that they are overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Documents and communications received by defendants after the CNBC program aired in October 2010 can have no possible relevance to the narrow questions of whether Remington's responses to the program that concerned the Plaintiffs were true and, if not, whether the statements were made by Remington with actual malice. This case is only about certain statements that Remington made in response to the CNBC program. Statements made by others in response to the program generally or in reaction to Remington's response to the program have no bearing on any factual issue that may exist in this case.

### G.   Requests for Production Numbers 8 and 9.

Plaintiffs seek in Request for Production 8 "[a]ll documents and communications concerning design and manufacturing drawings and/or specifications relating to any and all safety mechanisms used, intended for use (whether used or not), proposed for use (whether used or not), or deleted from use on bolt action rifles from 1943 to the present. This request includes, but is not limited to, any suggestions, recommendations, abstracts, drawings, sketches, handwritten notes, computer modeling, prototypes, and any other document and

communication." In Request for Production 9, plaintiffs seek "[a]ll documents and communications concerning design and manufacturing drawings and/or specifications relating to any and all trigger mechanisms used, intended for use (whether used or not), proposed for use (whether used or not), or deleted from use on bolt action rifles from 1943 to present. This request includes, but is not limited to, any suggestions, recommendations, abstracts, drawings, sketches, handwritten notes, computer modeling, prototypes, and any other document and communication."

Defendants objected to these requests on the basis that they are overly broad in time and scope and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs filed, settled and dismissed their product liability action against defendants more than 10 years ago. Although plaintiffs' request for design and manufacturing drawings, notes and related documents dating back to 1943 might have been relevant to their now-dismissed product liability action, they have no bearing on the narrow factual issues present in this defamation case.

### H. Request for Production Number 10.

Plaintiffs seek "[a]ll documents and communications concerning any fire control design and/or safety design that was proposed, recommended, suggested or considered as a fire control and/or safety design for a bolt action rifle from 1943 to the present, including but not limited to all WFC designs and/or concepts, Type 1,

Type 2, and Type 3 fire control designs and/or concepts. IT series designs and/or concepts, Findlay fire control designs and/or concepts. Rensi fire control designs and/or concepts, F.E. Martin fire control designs and/or concepts, 4X4, 6 Bar, any and all linkage design and/or concept, any and all skeletonized housing design and/or concepts, any other experimental design or concept. This request includes, but is not limited to, all drawings, sketches, notes, invention reports, test reports, patentability reports, designer notebooks, and prototypes."  Defendants objected to this request on the grounds that it is overly broad in time and scope, unduly burdensome and not likely to lead to the discovery of admissible evidence.  Any consideration defendants may have given to alternative designs dating back to 1943 has no bearing on whether the statements Remington made in 2010 regarding the physical condition and function of the Barber rifle in 2000 were true or whether Remington made false statements with actual malice.

## **CONCLUSION**

For the reasons set forth above, defendants respectfully request that discovery from defendants be stayed pending the Court's ruling on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.  Alternatively, defendants request that the scope of plaintiffs' discovery to defendants be limited to the factual matters potentially relevant to plaintiffs' defamation claim.

DATED this 21st day of January, 2013.

s/ *Robert M. Carlson*  
Corette Pohlman & Kebe  
Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the requirements of Local Rule 7.1(d)(2). The total word count in the brief is 3,997 words, excluding the caption and certificates of service and compliance. The undersigned relies on the word count of the word processing system used to prepare this brief.

/s/ *Robert M. Carlson*  
Corette Pohlman & Kebe  
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2013, a copy of the foregoing document was served on the following persons by the following means:

 1, 2 and 3  by and through the Electronic Case Filing System.

1. Clerk, U.S. District Court

2. Richard Ramler
   Ramler Law Office, P.C.
   202 West Madison Avenue
   Belgrade, MT 59714
   RichardRamler@aol.com

3. Jon D. Robinson
   BOLEN, ROBINSON & ELLIS, LLP

202 South Franklin Street, 2nd Floor
Decatur, IL 62523
jrobinson@brelaw.com

                                                 /s/ *Robert M. Carlson*
                                                 Corette Pohlman & Kebe
                                                 **Attorneys for Defendants**